UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| VICTOR L. F.,<br><br>                              Plaintiff,<br><br>          v.<br><br>NANCY A. BERRYHILL, Deputy<br>Commissioner of Social Security for<br>Operations,<br><br>                              Defendant. | Case No. 2:17-cv-01806-JLR-TLF<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for December 21, 2018 |

Plaintiff appeals the Commissioner's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends that this Court should reverse the Administrative Law Judge's decision and remand to the Commissioner for payment of benefits.

FACTUAL AND PROCEDURAL HISTORY

On July 19, 2013, plaintiff filed applications for disability insurance benefits and for SSI benefits, alleging in both applications that he became disabled beginning December 31, 2006.

Dkt. 18, Administrative Record (AR) 20. Plaintiff later amended his alleged onset date of disability to March 1, 2012. *Id.* at 20, 364. The Commissioner denied these applications on initial administrative review and on reconsideration. *Id.* at 20.

An administrative law judge ("ALJ") conducted a hearing on October 15, 2015, AR 53-79, and a supplemental hearing on February 11, 2016. AR 80-126. On May 4, 2016, the ALJ issued a decision, employing the Commissioner's five-step sequential disability evaluation process to find plaintiff not disabled. AR 20-41.

At step one of the sequential evaluation process the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. AR 22. At step two, the ALJ found that plaintiff had severe impairments consisting of chronic liver disease, affective disorders, substance addiction disorders, anxiety disorders, substance abuse, and a personality disorder. *Id.* at 23-24. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 24-26. The ALJ next considered plaintiff's residual functional capacity, finding at step four that he is unable to perform any past relevant work, but that at step five he could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. AR 26-41.

Plaintiff requested review by the Appeals Council; this request was denied and plaintiff appealed to this Court. AR 2; Dkt. 1.

## DISCUSSION

Plaintiff alleges the following errors:

(1)     The ALJ discounted expert opinion evidence from David Widlan, Ph.D.; James Czysz, Psy.D., James Hopfenbeck, M.D., Wayne Dees, Psy.D., Victoria McDuffee, Ph.D., mental health clinicians Jordan Morris and Curtis Gobea, and case manager Kyle Foerster; this assessment was based on legal error and was not supported by

substantial evidence; and

(2)    The ALJ erroneously discounted plaintiff's credibility regarding the extent of limitations caused by mental health conditions.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, in the alternative, for further administrative proceedings. The Court should hold that the ALJ erred in evaluating these medical opinions, and in assessing the testimony of the plaintiff; the undersigned recommends that the Court should reverse the ALJ's decision and remand for an award of benefits.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The ALJ is responsible for determining credibility, and for resolving any conflicts or ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). If more than one rational interpretation can be drawn from the evidence, then the Court will uphold the ALJ's interpretation. *Trevizo*, 871 F.3d at 674-75. That is, where the evidence is sufficient to support more than one outcome, the Court will uphold the decision the ALJ made. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007).

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759

1    F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and

2    evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision

3    of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified

4    by the ALJ are considered in the scope of the Court's review. *Id.*

5    I.    The ALJ's Evaluation of the Mental Health Opinion Evidence

6        An ALJ must give "clear and convincing" reasons supported by substantial evidence to

7    reject a treating or examining physician's uncontradicted opinion. *Revels v. Berryhill*, 874 F.3d

8    648, 654 (9th Cir. 2017). Even where contradicted, the ALJ may reject a treating or examining

9    physician's opinion only by providing "specific and legitimate" reasons that are supported by

10    substantial evidence. *Id.* The same applies to the opinion of a treating or examining psychologist.

11    *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017) (citing *Lester v. Chater*, 81 F.3d 821, 830-

12    31 and n.7 (9th Cir. 1995) (opinions of "physicians" include those from psychologists and other

13    "acceptable medical sources"[1])).

14        The ALJ can meet this requirement by setting out a detailed and thorough summary of

15    the facts and conflicting evidence, stating his or her interpretation, and making findings. *Revels*,

16    874 F.3d at 654.The ALJ generally must weigh a treating physician's opinion more heavily than

17    an examining physician's, and an examining physician's opinion more heavily than a non-

18    examining (reviewing) physician's. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). A

19    non-examining (reviewing) physician's opinion is not by itself sufficient to justify rejecting the

20    opinion of either an examining or a treating physician, *Revels*, 874 F.3d at 655, though it can

21    constitute substantial evidence if "it is consistent with other independent evidence in the record."

22    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

23

24    ---

[1] "Acceptable medical sources" include licensed physicians and licensed or certified psychologists. 20 C.F.R. §
404.1502(a); 20 C.F.R. § 416.902(a); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *1.

25

1    The ALJ need not discuss every item of evidence presented, *Hiller v. Astrue* 687 F.3d

2  1208, 1212 (9th Cir. 2012). The ALJ "may not reject 'significant probative evidence' without

3  explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995).  The ALJ's rejection of a

4  treating physician's opinion will be upheld if the opinion is "brief, conclusory, and inadequately

5  supported" by objective medical findings or "the record as a whole." *Batson v. Comm'r of Soc.*

6  *Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

7        The ALJ also must consider the opinions of other sources who do not fall within the

8  regulatory definition of "acceptable medical sources." *Revels*, 874 F.3d at 654.. Such "other

9  sources" fall into two categories: medical and non-medical.[2] 20 C.F.R. 404.1502; 20 C.F.R.

10  416.902; SSR 06-03p, 2006 WL 2329939, at *1-2. The ALJ may give less deference to these

11  "other sources" by providing reasons that are "germane to each [source] for doing so." *Revels*,

12  874 F.3d at 654-55. The same factors used to evaluate acceptable medical source opinion

13  evidence – length of treatment relationship, frequency of examination, nature and extent of

14  treatment relationship, supportability, consistency with the record, and provider specialization –

15  are used to evaluate opinion evidence from medical "other sources." *Id.* at 655 .

16        A.    Examining Psychologist David Widlan, Ph.D.

17        David Widlan, Ph.D., evaluated plaintiff in July 2015, opining that plaintiff would

18  struggle with persistence in task completion regardless of setting, would be incapable of

19  negotiating simple stresses on a consistent basis, would be unable to persist within a competitive

20  environment or perform within a full-time employment setting, and additionally would be prone

21  to poor task completion. AR 762, 766-67. Dr. Widlan also found that plaintiff showed marked

22  [2] Medical "other sources" include individuals who are licensed as healthcare workers by a state and working within

23  the scope of practice permitted under state or federal law, including licensed clinical social workers and therapists. 20 C.F.R. 404.1502(d); 20 C.F.R. 416.902(d); SSR 06-03p, 2006 WL 2329939, at *2. Non-medical "other sources"

24  include individuals such as the claimant, family members, friends, caregivers, and social welfare agency personnel. 20 C.F.R. 404.1502(e); 20 C.F.R. 416.902(e); SSR 06-03p, 2006 WL 2329939, at *2.

25

1   impairments (defined as "very significant impairment" resulting in "a substantial loss in the

2   ability to function effectively") in a number of different areas of understanding and memory,

3   persistence and sustained concentration, social interaction, and adaptation. AR 763-66.

4         The ALJ gave Dr. Widlan's opinion little weight; the ALJ pointed to perceived

5   inconsistencies within the opinion, and considering the record overall, found:

6           Dr. Widlan's opinion is internally inconsistent. Though Dr. Widlan opined
    that the claimant's examination findings showed moderate deficits, he opined

7           that the claimant had mostly marked limitations. He noted that the claimant
    would struggle with persistence regardless of the setting, but he observed that

8           the claimant was able to complete multiple serial counting tasks despite
    making some errors. Dr. Widlan's opinion is also inconsistent with the record

9           as a whole, which shows that the claimant is regularly described as
    cooperative, he related well to others and enjoyed socializing at the Emerald

10          House, and he uses public transportation, prepares simple meals, goes
    shopping, passes room inspections, pays his rent with money orders, and pays

11          his cellphone bill online.

12  AR 39.

13        Plaintiff argues the ALJ's reasons are not specific, legitimate reasons for rejecting Dr.

14  Widlan's opinion.

15        Dr. Widlan, as part of plaintiff's mental status examination, characterized the deficits in

16  social reasoning, memory, concentration,  ("MSE") as being "moderate". AR 762. The ALJ

17  erroneously concluded that those deficits could not produce the marked limitations that Dr.

18  Widlan found. For example, Dr. Widlan observed that plaintiff's memory was in the "borderline

19  or deficient" range, that he appeared to have only "basic" insight, and that he could not make

20  basic abstractions. *Id.* at 760. Dr. Widlan also relied on plaintiff's overall presentation, which he

21  noted was consistent with plaintiff's report of long-term depression, noting further that plaintiff's

22  symptoms were "quite chronic." *Id.* at 758, 760, 762.

23        The ALJ focused on some of the MSE findings in discounting Dr. Widlan's opinion. As

24

25

Dr. Widlan explains in a June 2016 letter he submitted to the Appeals Council:

> I feel strongly that the Mental Status Examination tasks have been overweighed in this case. While Mr. Funck was able to perform these tasks with moderate impairment, they were conducted in a one-on-one non-competitive environment. The deficits identified would be magnified in a competitive work-setting. Extrapolating these findings directly to a competitive work setting is problematic as his mental health difficulties would likely impact pace and persistence. Mental status testing does not account for the stress associated with a competitive work environment. These MSE tasks are one data point within the psychological evaluation.

AR 1, 3. Dr. Widlan observed that difficulties associated with plaintiff's depression, anxiety, and mood instability "are likely to impact his behavior and social interactions in a work setting even if [his] social reasoning is only moderately impaired," noting further that "moderate" in this context means "a significant impairment" in that area.[3] *Id.*; *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (evidence submitted to and considered by the Appeals Council becomes part the record, which the district court must consider when reviewing the ALJ's decision for substantial evidence).

Where an examining psychologist's opinion is contradicted, the ALJ must provide specific and legitimate reasons for rejecting it.[4] *Revels*, 874 F.3d at 654; *Popa*, 872 F.3d at 906. Psychiatric methodology is relatively imprecise,  and mental health diagnoses "will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient"; therefore an ALJ must be careful not to over-rely on a claimant's MSE findings in discounting an examining psychologist's opinion. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th

---

[3] For the same reasons, the ALJ's finding that plaintiff's ability to complete multiple serial counting tasks was not consistent with Dr. Widlan's opinion that plaintiff would struggle with persistence regardless of the setting should be called into question as well, particularly since, as the ALJ himself notes, plaintiff made errors while performing those tasks. AR 39, 761.

[4] Because Dr. Widlan's opinion is not entirely consistent with the opinions of the other examining physician and psychologists in the record (discussed in greater detail below), as well as the opinion of non-examining (reviewing) psychologist Gerald Peterson, Ph.D. (AR 149-61), the "specific and legitimate" reasons rather than "clear and convincing" reasons standard applies. The same is true in regard to the opinions of Dr. Hofenbeck, Dr. Czysz, Dr. Dees, and Dr. McDuffee.

Cir. 2017). For the same reason, the ALJ also should avoid making any kind of direct comparison of terms used to describe the MSE findings and terms used to describe the limitations based – in whole or in part – on those findings, without proper evidentiary support in the record. That support is absent here.

The ALJ's finding that Dr. Widlan's opinion is externally inconsistent is not supported by substantial evidence. The fact that he can be cooperative with mental health professionals does not necessarily mean he is capable of being cooperative within a competitive work environment. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (activities a claimant may engage in for therapeutic reasons are not necessarily transferrable to a work setting nor do they necessarily indicate an ability to engage in those activities for a longer period of time).

The evidence of plaintiff relating well to others and socializing is not substantial.. The ALJ relied primarily on a treatment note from February 2014 that plaintiff "seemed to enjoy socialization at [sic] club and was able to relate well to others." AR 34, 753. The ALJ also points to plaintiff's report to one evaluating psychologist that he goes to Emerald House for lunch and "talk[s] to some of the people there." *Id.* at 34, 696.

One document notes that plaintiff reportedly said he has no problems getting along with others. *Id.* 408. Plaintiff stated he spent time with others a couple of times a week, and "a lot less" since his impairments began. *Id.* at 407-08. Plaintiff testified he does not get along with others, people annoy him, he does not like and tries not to be around others, and he gets in physical fights every couple of months. *Id.* at 96, 99-101. Plaintiff also told an examining psychologist (noted above) that he does *not* socialize and the people he meets "are not really friends." *Id.* at 695.

Much of the opinion evidence in the record also supports a finding that plaintiff has

significant problems getting along with others. Examining psychologist Victoria McDuffee, Ph.D., found him manipulative, opining he would have "moderate to marked issues with maintaining appropriate behavior." AR 486. Examining physician James Hopfenbeck, M.D., and examining psychologist James Czysz, Psy.D., opined that plaintiff was markedly impaired in his ability to communicate and perform effectively in a work setting. *Id.* at 491, 702.

Dr. Czysz found plaintiff had a "severe" impairment (defined as "the inability to perform the particular activity in regular competitive employment or outside of a sheltered workshop") in his ability to maintain appropriate behavior in a work setting. *Id.* at 491. And Curtis Gobea, MA, one of plaintiff's treating mental health therapists, found him markedly impaired in his ability to accept instructions and respond appropriately to criticism from supervisors." *Id.* at 989.

And, using public transportation, preparing simple meals, going shopping, passing room inspections, paying rent and his cell phone bill – these activities listed by the ALJ are not the sort of activities that plaintiff can readily transfer to a work environment. *Diedrich v. Berryhill*, 874 F.3d 634, 643 (9th Cir. 2017) (activities such as household chores, cooking simple meals, paying bills, and occasional shopping outside the home, "are not similar to typical work responsibilities"). Further, the record fails to show plaintiff engages in these activities at a frequency or to an extent that necessarily indicates he would be able to transfer such skills to the workplace; nor do these activities contradict his other testimony. AR 95-99, 104-111, 404-07. 695-96; *Diedrich*, 874 F.3d at 643; *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).

B.    Examining Physician James Hofenbeck, M.D., and Examining Psychologist James Czysz, Psy.D.

James Hofenbeck, M.D., conducted a psychiatric evaluation of plaintiff in May 2013, opining that plaintiff would be: markedly impaired in his ability to understand, remember, and persist in tasks by following detailed instructions, perform activities within a regular schedule,

maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, be aware of normal hazards, take appropriate precautions, communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, set realistic goals, and plan independently; and severely impaired in his ability to maintain appropriate behavior in a work setting. AR 491.

A psychological evaluation conducted by James Czysz, Psy.D., in April 2015, found plaintiff was markedly limited in his ability to: understand, remember, and persist in tasks by following detailed instructions, perform activities within a regular schedule, maintain regular attendance, be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, communicate and perform effectively in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms. *Id.* at 702.

The ALJ rejected both opinions as inconsistent with the record as a whole and with underlying examination findings. *Id.* at 38. Plaintiff argues these are not specific and legitimate reasons for rejecting either medical source's opinion.

The ALJ referenced plaintiff's daily activities (including his ability to pay bills, shop, use the microwave, ride his bike, and use public transportation); noted that in treatment records, plaintiff is regularly described as cooperative; and noted plaintiff's ability to socialize and relate well with others at the house where he was living. *Id.*

Dr. Czysz's findings are not inconsistent with his opinion. Dr. Czysz described plaintiff as agitated, disheveled, hyper-verbal, and noted he "would persevere on past traumatic events." AR 703-04. Dr. Czysz found plaintiff's thoughts were accelerated and rapid, his mood was

1    depressed, and he had "a hard time sustaining cognitive focus." *Id.* Despite the presence of some

2    normal MSE findings (*id.*), the ALJ provides no valid reasons for discounting Dr. Czysz's

3    reliance on the abnormal findings.

4        Dr. Hofenbeck's MSE findings  did not reveal abnormalities as significant as the

5    abnormalities found by Dr. Czysz. AR 492. Yet Dr. Czysz stated that plaintiff "[g]ets agitated",

6    "gesticulates at times," was depressed, and showed "significant" anxiety. *Id.* In addition, the

7    limitations identified by both of these doctors are largely in line with other sources who have

8    treated or examined plaintiff. The ALJ erred by relying on plaintiff's ability to cooperate with

9    treatment providers, socialize with others, and engage in daily activities; this is not a specific and

10   legitimate reason to discount the opinions of these doctors.

11       C.    <u>Examining Psychologist Wayne Dees, Psy.D.</u>

12       Wayne Dees, Psy.D., evaluated plaintiff in March 2014, opining that plaintiff may have

13   difficulty performing complex tasks due to low energy/fatigue and low frustration tolerance. AR

14   697. Dr. Dees opined that because of depression, plaintiff would likely have consistent difficulty

15   working in a competitive environment and getting to work on time. *Id.* Dr. Dees also opined that

16   plaintiff's posttraumatic stress disorder would likely be problematic and that his hyper-vigilance

17   may put others at risk. *Id.* Dr. Dees opined that plaintiff appeared to have little interest in social

18   interactions and in establishing relationships, which also may be problematic in the workplace.

19   *Id.*

20       The ALJ found that Dr. Dees' opinion about difficulty working in a competitive

21   environment, and difficulty getting to work on time due to his depression, was not fully

22   supported by the medical record. AR 37. In support of this finding, the ALJ pointed to plaintiff's

23   statement in August 2013: "If it's important to me, I'm there." *Id.* at 639. This statement was

24

25

made in response to the question of impairment in plaintiff's ability to keep appointments, perform chores, avoid common dangers, *and* avoid victimization. *Id.* This statement does not necessarily mean plaintiff was referencing keeping appointments nor does it indicate that plaintiff actually possesses an ability to attend appointments on time and/or consistently.

The ALJ also discounted Dr. Dees' opinion that plaintiff's hyper-vigilance may put others at risk and that plaintiff appeared to have little interest in social interactions and in establishing relationships. The ALJ based this on documents in which plaintiff's behavior was characterized as cooperative in the medical record and that he is able to socialize and relate well to others. Yet substantial evidence does not support that characterization.

The ALJ noted (despite discounting Dr. Dees' opinion) that to account for plaintiff's mental health symptoms the RFC would include limitations that plaintiff would be off task up to ten percent over the course of an eight-hour workday, would be absent once every other month on average, should have no contact with the general public, there should be no collaborative work with co-workers required, and there should be no more than occasional contact with co-workers or occasional changes in the work environment. AR 37-38. But the ALJ failed to give legally sufficient reasons to support those conclusions and did not identify any evidence in the record concerning why those limitations were applicable rather than the more serious limitations indicated by Dr. Dees.

Because none of the reasons the ALJ offered for rejecting Dr. Dees' opinion are specific and legitimate reasons, the Court should hold that the ALJ erred.

D.   Examining Psychologist Victoria McDuffee, Ph.D.

Victoria McDuffee, Ph.D., evaluated plaintiff in April 2012 and opined that plaintiff would have moderate to marked issues with maintaining appropriate behavior, and that his

1   psychological issues were "a marked barrier to moving forward" AR 486. Dr. McDuffee opined

2   that plaintiff's thinking processes and practical judgment were markedly impaired, and that his

3   abstract reasoning was severely impaired. *Id.* at 487.

4          The ALJ rejected Dr. McDuffee's opinion that plaintiff would have marked issues with

5   maintaining appropriate behavior, for the sole reason that plaintiff has regularly been described

6   as cooperative in his treatment records. AR 37. As analyzed above (at pages 8-9), this

7   characterization is not supported by substantial evidence and thus was not a specific and

8   legitimate reason for rejecting Dr. McDuffee's opinion.

9          E.      Jordan Morris, MA, Curtis Gobea, MA, and Case Manager Kyle Foerster

10         Jordan Morris, MA,[5] completed a mental health intake evaluation of plaintiff in August

11  2013, in which Mr. Morris found a severe impairment due to anxiety and depressive symptoms,

12  as well as a marked impairment in social withdrawal and a severe impairment in sustained

13  persistence and response stress. AR 644-45.

14         Plaintiff argues the ALJ erred by not addressing Mr. Morris' opinion. Mr. Morris's

15  opinion constitutes "significant probative evidence" the ALJ should have addressed. *Revels*, 874

16  F.3d at 655; *Flores*, 49 F.3d at 570-71 (9th Cir. 1995); SSR 06-03p, 2006 WL 2329939, at *3

17  (medical "other source" opinions "are important and should be evaluated on key issues such as

18  impairment severity and functional effects"; non-medical "other sources" are "valuable sources

19  of evidence for assessing impairment severity and functioning").

20         Defendant argues any error committed by the ALJ here was harmless, because Mr.

---

21  [5] It is unclear from the record whether Mr. Jordan is a licensed clinical social worker or therapist – and thus would
22  qualify as a medical "other source" – or is instead more properly categorized as a non-medical "other source" such
    as a public or private social welfare worker or rehabilitation counselor. SSR 06-03p, 2006 WL 2329939, at *2. The
23  only other indication of Mr. Jordan's status is that his name is printed in the space designated as "Clinician" on the
    evaluation form he completed. AR 637. In either case, Mr. Jordan is not an "acceptable medical source," and thus
    the ALJ was required to provide only "germane" reasons specific to Mr. Jordan for rejecting his opinion. *Revels*, 874
24  F.3d at 654-55.

25

Morris never actually offered an opinion. But Mr. Morris expressly found plaintiff had a severely impaired ability to sustain persistence and respond to stress. That, along with Mr. Morris' finding of marked social withdrawal would reasonably produce *some* significant impact on plaintiff's ability work. The ALJ's failure to address this evidence, accordingly, was not harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless where it is irrelevant to the ALJ's ultimate disability conclusion).

Curtis Gobea, MA, one of plaintiff's treating mental health therapists,[6] filled out a statement of ability to do mental work-related activities, opining that plaintiff was primarily markedly impaired in the following areas: understanding and memory, persistence and sustained concentration, social interaction, and adaptation. AR 987-990. Mr. Gobea further stated he did not believe plaintiff was capable of performing full-time work. AR 991.

The ALJ found Mr. Gobea's opinion was inconsistent with the treatment record, in which plaintiff was regularly observed to be cooperative. AR 37. The ALJ also pointed to plaintiff's ability to take a bus, as well as evidence in the record that plaintiff enjoyed socializing at the house where he lived and was able to relate well to others. As analyzed above (at pages 8-9)the ALJ lacked substantial evidence for finding that Mr. Gobea's opinion should be discounted and failed to provide germane, legally sufficient reasons for rejecting Mr. Gobea's opinion.Therefore this Court should hold that the ALJ erred.

The record also contains a statement of Kyle Foerester; the record indicates Mr. Foerester was plaintiff's case manager at the Low Income Housing Institute.[7] AR 454. Mr. Foerester

---

[6] It appears that as plaintiff's mental health therapist, Mr. Gobea is a medical "other source." 20 C.F.R. 404.1502(d); 20 C.F.R. 416.902(d); SSR 06-03p, 2006 WL 2329939, at *2.

[7] There is no indication that Mr. Foerster is a licensed healthcare worker working within the permitted scope of his practice, therapist or other similar medical "other source," and therefore he falls under the category of non-medical "other source."

opined that during plaintiff's participation in a transitional housing program, he demonstrated an inability to complete assigned tasks on a consistent basis, showed difficulty maintaining a schedule as he frequently forgot about appointments, and demonstrated having a hard time dealing with conflict. AR 454. Mr. Foerster stated he did not believe plaintiff had the ability to work full-time. *Id.* As to this last statement, the ALJ stated the issue as to whether a claimant is disabled is reserved to the Commissioner and therefore the ALJ would not consider it. But Mr. Foerester directed his opinion to plaintiff's work-related capabilities, not to whether he assessed plaintiff to be disabled as defined by the Commissioner.

The ALJ also discounted Mr. Foerester's opinion that plaintiff could not complete assigned tasks on a consistent basis, and noted the MSE findings of Dr. Dees (showing that plaintiff was able to complete a four-step complex plan, and that his pacing and persistence were consistent across tasks). AR 36, 697. Dr. Dees also opined that plaintiff may have difficulty performing complex tasks due to low energy/fatigue and low frustration tolerance. AR 697. Accordingly, this one MSE data point taken from Dr. Dees' evaluation report is not substantial evidence upon which the ALJ may discount Mr. Foerester's opinion.

The remaining reasons why the ALJ rejected Mr. Foerester's opinion consist of the same reasons analyzed above (at pages 8-9) to be improper, i.e., that plaintiff has regularly been described as cooperative and able to relate well with others, that he reported if an appointment was important to him he would be there, and that he arrived on time for one of his psychological evaluations. AR 36. The ALJ, therefore, failed to provide any germane reasons for discounting the opinion of Mr. Foerester, and the Court should hold that this was error.

II.    The ALJ's Assessment of Plaintiff's Subjective Symptom Testimony

The ALJ "engages in a two-step analysis" when assessing a claimant's credibility

regarding subjective pain or symptom intensity. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). The ALJ first must determine whether there is objective medical evidence of a mental or physical impairment that "could reasonably be expected to produce the pain or other symptoms alleged*." Id.* If this test is met and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his or her symptoms only by providing "specific, clear and convincing reasons" for doing so. *Id.*

"General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* quoting (*Lester*, 81 F.3d at 834). In doing so, the ALJ may use "ordinary techniques of credibility evaluation," such as inconsistencies in the claimant's statements or between the claimant's statements and his or her conduct, any "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment," and whether the claimant has engaged activities of daily living "inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations omitted).

The credibility determination is not an examination of the claimant's overall "character", but rather an assessment of the claimant's testimony and other statements that is "designed to 'evaluate the intensity and persistence of symptoms after" the ALJ finds the claimant has a medically determinable impairment that could reasonably be expected to produce those symptoms. *Trevizo*, 871 F.3d at 678 n.5 (warning that the inquiry should not "delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness") (quoting and citing SSR 16-3p, 2017 WL 5180304).

As noted by the ALJ, plaintiff testified that he becomes anxious around people and cannot function when he is depressed. AR 27, 95. He testified that his anxiety, which he

1   experiences about once or twice a week, makes him not want to leave the house. *Id.* at 95-96. He

2   further testified that people annoy him and that he does not get along with others, getting into

3   physical fights once every couple of months. AR 96. Plaintiff testified that on bad days, which

4   occur half the time, he does not get out of bed. *Id.* at 96-97. Plaintiff also testified that his

5   memory is terrible, that he experiences fatigue, and that he has no motivation. *Id.* at 98.

6       The ALJ discounted plaintiff's testimony because the medical evidence in the record does

7   not support his allegations of disabling symptoms and limitations. AR 33-34. A determination

8   that a claimant's complaints are inconsistent with the objective medical evidence can form a

9   valid basis for discounting a claimant's credibility. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th

10  Cir. 2005).

11      The medical evidence the ALJ points to concerns plaintiff's physical condition. AR 33-

12  34. Plaintiff's primary complaints concern his mental health issues. And the weight of the

13  medical evidence in the record regarding those issues actually supports plaintiff's testimony.

14  Also, the ALJ erred in evaluating that evidence and in rejecting the medical opinions supporting

15  a finding of disability. The ALJ thus erred in relying on this basis for discounting plaintiff's

16  credibility.

17      The ALJ next pointed to evidence in the record concerning plaintiff's drug use, but does

18  not explain how such use distracts from plaintiff's credibility regarding his mental health issues.

19  AR 34. The ALJ also relies on the fact that plaintiff did not report any further specific instances

20  of having to defend himself from bullying after August 2014. *Id.* Actually, plaintiff testified that

21  he gets into fights with others about every other month. *Id.* at 99-100.

22      The fact that plaintiff did not specifically tell any of his treatment providers about other

23  incidents that he may have gotten into, does not itself call into question plaintiff's testimony on

24

25

the issue, particularly given the medical and other evidence in the record indicating significant

problems in social functioning. And the mere fact that plaintiff may be cooperative with

treatment providers, does not mean such cooperation translates to a competitive work

environment.

The ALJ also notes plaintiff's limited use of medication to treat his mental health issues,

reporting in June 2015 that he had been hesitant to start medication for his depression for a long

time, despite recommendations that he do so. AR 34. A claimant's unexplained or inadequately

explained reasons for not seeking or following a prescribed course of treatment is a valid factor

the ALJ may consider in discounting the credibility of a claimant's testimony. *Chaudhry v.

Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

The ALJ "must not draw any inferences" about a claimant's symptoms and their

functional effects from a failure to seek treatment, "without first considering any explanations"

that the claimant "may provide, or other information in the case record, that may explain" that

failure. SSR 96-7p, 1996 WL 374186, at *7; *Carmickle*, 533 F.3d at 1162 (improper to discount

credibility on the basis of failure to pursue treatment when the claimant has a good reason for not

doing so).

In response to the question as to why he did not seek mental health treatment earlier,

plaintiff testified that he was homeless at the time with "all that entails" and that he "was just

struggling." AR 92. He also had no access to health insurance. *Id.* Inability to afford treatment

and lack of insurance are valid reasons for not seeking greater treatment. *Trevizo*, 871 F.3d at

681.

Plaintiff also testified that he missed appointments due to both transportation issues and

"just forgetting appointments." AR 92-93. In regard to the transportation issues, plaintiff testified

that he takes the bus because it is the only way he can really get around, but does not like riding it because it is crowded and he does not liking being around a lot of people and gets anxious. *Id.* at 93. That in turn causes him to get off the bus and miss his appointments. *Id.*

The Ninth Circuit has found it to be "a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (finding the fact that a claimant with mental health issues may "not seek treatment for a mental disorder until late in the day" is not a proper basis upon which to discount the accuracy of the claimant's testimony, noting those with depression often do not recognize their condition reflects potentially serious mental illness)).

And the ALJ discounted plaintiff's credibility due to his activities of daily living, noting that he had reported and testified doing laundry, going shopping, counting change, reading, fixing broken things, using public transportation, preparing meals using the microwave, passing inspections of his room, paying his rent using money orders, paying his cellphone bill online, and riding his bike on occasion. AR 34. These are not activities that are necessarily transferrable to a competitive work setting. *Diedrich*, 874 F.3d at 643. Further, the record fails to show plaintiff engages in these activities at a frequency or to an extent indicating such transferability or otherwise contradicting his symptom testimony. AR 95-99, 104-11, 404-07. 695-96; *Diedrich*, 874 F.3d at 643; *Ghanim*, 763 F.3d at 1165.

The ALJ also characterizes the record as showing plaintiff reported visiting and getting along with others, relating well with others, and seeming to enjoy socializing at the house where he was living. AR 34. The record does not support the ALJ in characterizing the evidence as such. Accordingly, none of the reasons the ALJ offered for finding plaintiff to be less than full

1 credible concerning his symptoms and limitations were valid.

2 III.     Remand for an Award of Benefits

3 Plaintiff seeks reversal and remand for an award of benefits or in the alternative for

4 further administrative proceedings. "The decision whether to remand a case for additional

5 evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d

6 at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

7 A direct award of benefits would be warranted if the following conditions are met: First,

8 the record has been fully developed; second, there would be no useful purpose served by

9 conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence

10 (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that

11 was rejected by the ALJ were instead given full credit as being true, then the ALJ would be

12 required on remand to find that the claimant is disabled; and fifth, the reviewing court has no

13 serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th

14 Cir. 2017) (amended January 25, 2018); *Revels,* 874 F.3d at 668.

15 If an ALJ errs and there is uncertainty and ambiguity in the record, the district court

16 should remand to the agency for further proceedings. *Leon*, 880 F.3d at 1045 (quoting *Treichler*

17 *v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014)). If the district court concludes

18 that additional proceedings can remedy the errors that occurred in the original hearing, the case

19 should be remanded for further consideration. *Revels*, 874 F.3d at 668.

20 Here, remand for an award of benefits is warranted. Given the ALJ's errors in evaluating

21 the medical opinion evidence in the record and in discounting plaintiff's credibility concerning

22 his symptoms and limitations, neither the ALJ's assessment of plaintiff's residual functional

23 capacity (AR 26) nor the ALJ's determination that plaintiff could perform other work existing in

24

25

1    significant numbers in the national economy at step five of the sequential disability evaluation

2    process (AR 40-41) should be upheld.

3        Plaintiff's treating mental health therapist, Curtis Gobea, opined that plaintiff was

4    incapable of full-time work, based on the primarily marked limitations Mr. Gobea assessed in

5    almost every domain of cognitive and social functioning. That opinion, furthermore, and those

6    limitations are in line with the overwhelming weight of the other medical opinion evidence in the

7    record, including from Dr. McDuffee, Dr. Hofenbeck, Dr. Czysz, Dr. Dees, and Dr. Widlan, each

8    of whom personally evaluated plaintiff. This opinion evidence additionally supports plaintiff's

9    testimony and reporting concerning the significant mental functional symptoms and limitations

10   he experiences.

11       No other opinion evidence in the record – other than that of non-examining (reviewing)

12   psychologist Gerald Peterson, Ph.D. (AR 149-61) – contradicts those opinions and testimony.

13   *Tonapetyan*, 242 F.3d at 1149 (non-examining physician's opinion may constitute substantial

14   evidence only if consistent with other independent evidence in the record). The record has been

15   fully developed, and therefore no useful purpose would be served by remanding this matter to

16   conduct additional administrative proceedings. The Court should hold that there are no serious

17   doubts as to whether plaintiff is in fact disabled based on a consideration of the record as a

18   whole.

19                        <u>CONCLUSION</u>

20       For the foregoing reasons, the undersigned recommends that the Court REVERSE the

21   Commissioner's decision to deny benefits and REMAND this matter for an award of benefits.

22       The parties have **fourteen (14) days** from service of this Report and Recommendation to

23   file written objections thereto. 28 U.S.C. § 636(b)(1); Federal Rule of Civil Procedure (FRCP)

24   72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for

25

purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit, the Clerk shall set this matter for consideration on **December 21, 2018**, as noted in the caption.

Dated this 3rd day of December, 2018.

Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22